Good morning. Case number 319-0397, Edward Sims Jr. Appellant v. Henry County Board of Review Appellees and Illinois Property Tax Appeal Board Appellee. Hi, Mr. Pepping. Yes, Your Honor. Please begin. All right, thank you. So, Honorable Justices, may it please the Court, I'm Jerry Pepping. I'm here on behalf of Plaintiff Edward F. Sims Jr. I'm going to start by addressing the constitutional arguments in this case. And I want to talk about a couple of the cases. The Peterson Plaza case was a decision cited by the defendants in this case. It involved a property transfer tax ruling for enterprise zones. In that case, the plaintiff, challenging things, did not raise a constitutional argument at the administrative level or at the trial court level. And it was argued for the first time on the appeal that it was this ruling dealing with a 50% threshold to be commercial or industrial was unconstitutionally vague. The Court first stated that the constitutional challenge should be forfeited, but then addressed the issue and found on the merits that having a 50% commercial threshold for purposes of it qualifying for an enterprise zone was not constitutionally vague. That case is not on point as it involves the Sims decision. In the Sims case, our case, we're looking at a situation where there was no opportunity to address the argument that was being made at the trial court level. For the first time, that the statute boilerplate section saying plural includes singular and singular includes plural should be used to define the productivity to the farm to include all farms, wherever situated. And that was first raised in oral argument by the defendant at this hearing. Now, before Judge O'Connor, Judge O'Connor had me speak first and then the defendant's counsel speak. There was no opportunity for me to speak thereafter. So I had no opportunity to address that issue at the trial court level. Now, and it's a far different issue in terms of the constitutional issue, of course, in that situation. Another case that was cited was the Board of Education versus Board of Education, the defendant side of that case. But in that case, the constitutional argument was not found to be forfeited because there was no real opportunity to prevent the argument previously. Very similar to our case. I cited in our reply brief, the Okasik versus Children's Home and Aid Society case. In that case, the Supreme Court took the position that to the extent any forfeiture argument could be made, it should be overlooked in the interest of maintaining sound and uniform body of precedent. And further stated that the only issues were issues of law. So because of that, there was no problem with proofs and defendants were able to present an argument. So the issues of law, of course, have done over review as indicated by the court. So in this situation, I think the forfeiture argument fails. The other constitutional issues were kind of addressed in bold briefs a little bit in some of the cases cited. And one of those cited by both sides was the Maroney case, a 2013 First District case cited by defendants. And they indicate in that case that the Illinois Constitution requires that real estate taxes shall be levied uniformly by valuation ascertained as the General Assembly shall provide by law. And that uniformity requires equality in the burden of taxation. Taxing officials may not tax the same kind of properties within the same taxing boundary at different proportions to their true value. And that's what this attempted reach is doing on the part of defendants. They want to tax property not based on the contribution of a building to that farm. But they want to look at who's the owner, how many other farms do they own in this county and other counties, who knows? And how is the equipment in the buildings used on other farms somewhere else to create value to those other farms? So, you know, we also cited the case of Walsh versus Property Tax Appeal Board for that same equality of taxation in proportion to the value of the property that's being taxed. And this property is not the other farms that are miles away. You know, the defendant tried to raise another case saying you can look at other properties. They cited the County of DuPage versus Property Tax Appeal Board, a 1995 Second District case. But that case did not look at other property rights. That case involved a commercial building that lacked sufficient parking and it had included in its property rights an easement to park on an adjacent lot. So that easement was a property right of this parcel in that case and should be considered in the value of that parcel and defining how much that's worth. In our case, Mr. Sims doesn't have any easements that make other property rights involved in this property. So I want to now turn to the issues presented by the Peacock decision. And that decision was a 2003 Fourth District decision involving a farm property and taxation of a building on that property, which is the very same issue we have in this case. In the Peacock decision, the court relied on the one expert who actually looked at the issue of obsolescence and looked beyond the cost approach. And they looked to contribution to productivity of the farm. Now, in that case, this particular expert, his name was Cornwell, was both an appraiser and a farmer, just like our expert, Mr. Blaine, was an appraiser and a farmer. And Cornwell relied on his life experience in farming to testify as to what the contribution that these buildings would have and to what extent were they obsolete. And because he had that experience, he was able to make a judgment on that issue. And Mr. Blaine made a similar judgment in this case. He looked at the size of the building and found it was oversized and looked at the two types of obsolescence and found that it was beyond what was needed for the productivity and didn't add full value. However, when you look at what the other expert witness had to say, and Blaine's testimony is in the common law record, that was Joyce Webb, Henry County's appraiser. When confronted on cross-examination that she should have gone beyond the cost approach in valuing the building and considered that this building is too large to add the full value for productivity purposes, she opined that there was no super adequacy here because Mr. Sims would not have built the building this size unless it was useful to him. And that she knew that Mr. Sims had 692 acres in Henry County alone. In addition to this farm, he had many other farms. And so she said that there can't be obsolescence because he wouldn't have built it this big if he couldn't use it somewhere and he's got a lot of other acres somewhere else. Now in cross-examination, when confronted with this, that, hey, that should not count other properties and you should not be considering other farms, she said, well, that's very narrow-sighted. She found that valuing a building based on its contribution to the parcel it's on is narrow-sighted and not logical to her. So I asked her, doesn't that prevent you from doing this? And she said, no. And I said, well, that's not the law. Well, she said, it's not logical to me. So she never considered the issue of obsolescence. Is this building overbuilt for the parcel it's on? How much does it contribute to that parcel? Never looked at it. So this isn't a case of us trying to impeach her methodology. She never looked at it. She looked solely at the cost. She was inventing her own concept of how farm buildings should be valued. And that's different than what the legislature intended. So I think it's a situation where we have one appraiser who had competent testimony that actually looked at that obsolescence issue. And the decision in Peacock says the cost approach is only a starting point. You have to look beyond that and look at how obsolescence is present in determining the productivity of the farm. Peacock held comparables are not necessary, even though they weren't. Mr. Bleen looked at another example, which was the Crudwell case and found there are other situations that you can find where there is large overbuilt buildings. There are few and far between, but some exist. And when you're selling it as a one property and looking at what it does for that property, there's got to be some valuation change. There's also a case that does not involve a farm building, which is the Lake County Board of Review versus PTAB, which is a second district case from 1986 that involved the Great America Amusement Park. And in that case, it also involved the issue of obsolescence and a little different because it's not the productivity of farm buildings. It was an amusement park. But the appraiser for that plaintiff found obsolescence in very similar percentages to those used by Mr. Bleen in our case. So obsolescence clearly exists. And the definition of the statute is one which requires that these buildings only be taxed based on their productivity to the farm. Now, I'm sure defendant has searched for other cases to find, are there any other cases where other farms have been considered when valuing a building and its productivity? I'm sure if they had found any, they would have cited those. I don't think that the court should create a legislative broadening of a statute to define farms as multiple properties in different locations. So this isn't a situation where there's two adjacent parcels, where they are operated as one farm. We've got, you know, this is a single 224 acre tract that is its own farm. And I don't think we should go down that slippery slope of trying to define productivity as to all farms wherever known because that would create huge issues in application. One would be, what if Mr. Sims transferred it to his daughter, his son? They don't own as many farms, an entity. What if it's sold? Does the assessment change the next day? How do you find out how many acres someone else owns? Do you send out a questionnaire? I mean, it'll be total chaos to try to redefine the tax code in terms of productivity of a building to a farm to require some kind of survey of all the other farms owned by somebody. Now, Judge O'Connor looked at this issue and he said that this is an issue of law. The issue is when we're looking at productivity, does it constitute productivity to this farm or multiple farms? That's the issue here. And it's an issue of law. And I think this case is going to Ottawa, regardless of how I rule. Well, because of that, because it's an issue of law, the de novo standard of review should apply here. Because the sole issue is, can we look at the testimony of Joyce Webb that uses a legal standard, which I believe is different than what the legislature intended? And if you can't, then there is no evidence to support the absence of obsolescence. If you look at it the way I think the legislature intended, there clearly is obsolescence evidence in the file and it was put into testimony by Mr. Bleen, our expert. So I think we'll look at that statute involving singular versus plural. That statute could be referring to like the number of owners of the property. So if you have a husband or wife that own a property, it's the same thing as one person. You're looking at how to value that property. So it applies to a taxpayer, whether it's multiple taxpayers or the same taxpayer that owns that property. I don't think the legislature ever intended someone to come up with this creative argument that the property should include multiple other properties wherever located miles away. I think that would really add a lot of problems in the application of the tax code and would involve constitutional problem because that's just simply not rational. It's not a uniform system of taxation and you're not taxing property based on the value of the property. You're basing on it based on the owner's wealth, how many other farms they own and what perceived contribution there is to other properties that aren't even valued by that assessor. Thank you very much. Are there any questions, your honors? Do you have any questions? No, not for me. Mr. Smith? Apparently not. Mr. Beppinen, thank you very much. Thank you. And Mr. Griffiths, I understand you're going to say ten minutes. That's right. Thank you. May it please the court, Assistant Attorney General Carson Griffiths on behalf of the Property Tax Appeal Board. I'd like to start with plaintiff's contention that Ms. Webb invented her own standard for assessing the contributory value of this shed at issue. That's incorrect. Her assessment was based on the plain language of the property tax code. Under the code, farm buildings are based upon their current value, based upon their current use and their, quote, contribution to the productivity of the farm. And the code further defines the farm as any property used for an agricultural or horticultural purpose. And in that same definition adds that improvements should be assessed as part of the farm when they contribute, quote, in whole or in part to the operation of the farm. And that standard was reaffirmed by the Illinois Supreme Court in O'Connor when it said that the legislature has provided that farm buildings should be valued on the basis of, quote, their contribution to the farm operation. And here the evidence was clear. Mr. Sims' farm operation spanned 692 acres, as Mr. Pepping recognized, and the 20,000-square-foot shed was used to store machinery for cultivating that land and for harvesting crops on all that land, not just the 224 acres on the same taxable parcel on which the shed sat. So applying that plan language here, PTAP correctly considered the value of that shed as it applied to the productivity, as it enhanced the productivity of the full farm operation. Nothing in the code's language itself, contrary to the trust argument, limits the farm to a single taxable parcel. Again, it says that it should be assessed based on its value to farm operations without any specifications on how broad or narrow those operations might be. And if the legislature had intended to so limit the definition of farm, it would have used the phrase farmland parcel, like it did in Section 10-125D of the code, where it said that the contributory value of wasteland should be assessed based on its contribution to a specific farmland parcel. They didn't do that, and so they didn't – they could have, and they didn't. Also, the trust interpretation here defies common sense. Both experts in this case agreed that most farm operations consist of more than one parcel, that farmers have a base of operations where they house their machinery, and they use that base of operations to farm every parcel they own. Property, including farm improvements, should not be assessed in a vacuum. This shed derives its value from the fact that it can house large machinery, modern machinery, that can cultivate a lot of land and a lot of crops. And as Webb recognized during the – or in her appraisal, excuse me, it would be impractical for farmers to build separate machine shops or sheds to house equipment on each single taxable parcel they own. So the shed really has a lot of value in the fact that it can efficiently house a lot of machinery, that can farm a lot of land, and that's precisely within the code's plain language of requiring that improvements be valued based on their contributions to the full farm operations productivity. Can I ask you a question? Hypothetically, I live down in the middle of the cornfields, and so hypothetically, let's say a farmer has – it's not unusual – a thousand acres of farm ground. But he has a separate parcel that's not contiguous with any of those farm operations where he stores his equipment. As for these large farms, these combines get bigger and bigger and bigger, and the other equipment. So he's got this separate parcel of land that he has his sheds on. And so would that parcel – in your theory, would that parcel of land that has these big sheds, would you look at its contribution to those non-contiguous thousand acres? Because if he sells that piece of property by itself, it only has that value if somebody's got a thousand acres of farmland and needs that much machinery storage. Yes, you would look to those acres, Your Honor, and that's because exactly what you pointed out. Someone who wanted to buy that shed would be someone who had a lot of acreage, could have a very productive large farm. So that shed still holds its value. Well, what if they wanted to buy it because they liked the location of the land and they were going to tear the shed down and put a McDonald's on it or a house? Well, that would change the valuation of that parcel once it was used for something other than farmland under the code. But the market would still determine it based on its current use. And that would be as a farm shed. So under the trust interpretation – so take your example. If those parcels were completely taken up by the shed – it's not the case here, but say it's just a parcel that holds the shed and then across the street, there's a non-contiguous parcel that's a farm, farmland only. Under the trust interpretation, that shed would have no value because it wouldn't contribute anything to the specific parcel on which it's set. And that just cannot be what the legislature intended, that these productive large farms would escape taxation simply because of the way the taxable parcels are constructed and the way they're used. Again, there's value being created by that fact. So I'd also like to point out that this court need not even reach the statutory interpretation argument here because, again, PTAB's ultimate decision was the resolution. Let me interrupt you. When we talk about value, are we talking about its specific value to the owner or market value? It would be market value, although market value is more in the context of other properties. Again, farm improvements are a little different in that they look at the contribution to productivity of a farm operation. So, yes, on the market, this shed would have value because it could create a lot of productivity. It could be used for large machinery, a lot of machinery to cultivate a lot of acreage. And so on the market, yes, it would have value, Your Honor. And turning back to the point that, again, we're here on the manifest way to the evidence standard for PTAB's ultimate decision. And so if this court elects not to reach the statutory interpretation issue, it need not because for two reasons. First, Ms. Webb had other reasons for declining to apply depreciation other than the fact that Mr. Sims had multiple parcels. She noted that the building was brand new. We're talking about the 2012 tax year. It was built in 2011. And under the Department of Revenue's guidance, farm improvements that are new, their value will be represented by the undepreciated replacement cost of those improvements. So that's precisely what we have here. She also testified that it was the shed was attuned to suit the needs of a typical farm in Henry County. And so that was an alternative reason for her opinion that no depreciation should be applied. And this court can affirm on that basis. Also, I'd like to briefly note that even if this court finds that Ms. Webb's appraisal was flawed, the trust bore the burden of proving overvaluation here, and its own appraisal was severely flawed for all the reasons discussed in PTAB's decision. The use of a comparable property that was not arm's length sale, failure to explain why certain estimates were made, or the division of depreciation on that auction property. And this court recently held in the Mantino Community School District case in August of this year, that if PTAB is faced with two flawed valuation methodologies, because the burden of proof rests on the party challenging the local assessment, that local assessment should stand. So in this case, even if this court says, well, Ms. Webb made an error in her report, PTAB's finding that the trust failed to bear its burden of proof that the shed was overvalued should stand. And unless this court has any other questions, I'd ask that you affirm PTAB's decision, and defer to my co-counsel to address the remaining issues in the case. Thank you, Mr. Griffiths. I don't believe there are other questions for you. Ms. Barrick. May it please the court, Stephanie Barrick, represent the Henry County Board of Review and Tamara Esteins. I want to reiterate that the only issue that's properly before this court is whether or not PTAB's decision, which affirmed and found in favor of the Henry County Board of Review's valuation, was against the manifest weight of the evidence. This is an appeal of an administrative decision, and it's basically, as my co-counsel started pointing out, it was a battle of experts. There were two appraisers who offered contradictory testimony to the agency, Lean and Webb, and they both used the cost approach. Lean found a 60% depreciation for a building that had just been built the year prior, coming up with 40% functional obsolescence and 20% external obsolescence, and he came up with those numbers relying on what he deemed to be a comparable sale. The problem with that and what came out through Webb's testimony is that this comparable sale was a court-ordered auction relating to a criminal case where the property was sold, and it was bought by a family member of the original property owner, and so he used the calculations and the math from what that building was sold for in coming up with this 60% depreciation. Now, Webb, on the other hand, was of the opinion that that was not an arm's-length transaction. She used the cost approach, but was of the opinion she could not find a comparable sale, and as co-counsel pointed out, she took into account the year this building was built, looking at the farming industry and the economy of Henry County in relation to farming, and then also took into account why Mr. Sims built this building, what it was to be used for its intended use, and the contribution to his farming operation. And so it's not as opposing counsel indicates where she clearly didn't consider these factors. She did, but she was of the opinion that there was no basis for depreciation and found that the value of this property was $429,122, I should say, the building itself. Now, the PTAB decision was that he found her credible, had issues with Gleam, thought his analysis and conclusions were flawed, that he didn't think there was an arm's-length transaction, that a lot of these calculations were not well explained, and again, it was Sims' burden at this particular agency hearing, and that he simply did not meet the burden and found in favor of the Henry County Board of Review. Now, what I want to point out and I think is ironic about this is that the hearing officer concluded that the farm improvement was worth $429,000 plus in relation to this building. The Henry County Board of Review had only assessed and valued this building at $281,520, and PTAB still did not increase the valuation, just simply left it since it was a much lower amount that had been offered. And this is the conclusion of PTAB. And as I pointed out, this is an administrative agency decision, and the review should be of that decision. It is not a review of the trial court. So with all due respect to Judge O'Connor, I know he was fascinated by a lot of questions he asked and issues, but the reality is his comments are irrelevant because this is a review of what happened at the agency level, and none of those issues or arguments were presented at the agency level. And opposing counsel knew about the appraisals, knew what the issues were, and he could have raised those issues in front of PTAB, but did not. They were not included. PTAB did not make any statutory interpretations, did not make any conclusions of law. This is simply a question of valuation and depreciation. And the issue of Ms. Webb's methodology or how she applied it is still a question of fact, as based on the cases cited in the briefs. So here again we have factual findings, and factual findings of the agency should be deemed prima facie true and correct. And I'd ask you to find in favor of the board and deny Simms' appeal. Thank you. Thank you, Ms. Webb. Any questions? No, not for me. No. All right. Mr. Pepper? Thank you, Your Honor. So a couple of things here. First of all, the current use as defined in the statute for taxing is not for any properties. It's for any property, okay? And the operation of the farm is what's used in the statute, not all farming operations. So the question is, what does the farm mean? Does it mean all farms?  And basically what counsel is trying to do is redefine the code, the property tax code, as determining value to the owner, not value to the farm. Also, they confuse depreciation and obsolescence. Mr. Blaine found no depreciation. It's a new building when this happened. But what he found was obsolescence, 60% obsolescence. And Crudwell was not in a chart of comparables where he looked at comparable sales and properties and what obsolescence they had and what this was. It was just an example, which is hard to find, of a crazy oversized building. This building that Mr. Sims has is a half an acre, okay? So how much does that half an acre add to the productivity of the farm? How many bushels per acre can be produced with a half acre building versus a quarter acre building? That's what Mr. Blaine was looking at. And in terms of the administrative agency looking at the decision, the administrative agency decisions can be reviewed de novo as a matter of if there are issues of law. And that's what we're dealing with here. Mr. Pepping, can I interrupt you for a second? Sure. I believe what your opponents are saying was, let's say, hypothetically, we agree with you that this building itself might have been, there might have been some issues with the way it was assessed. But at the end of the day, it's the question whether the PTAB's decision on the assessed value of the whole picture was against manifest way of the evidence. In other words, as opposed to finding a fault with, say, one element, one part of their calculation, do we look at that or do we look at the big picture? Yeah, I think you have to look at this as a battle of appraisers, as was stated. And which appraiser can you rely on? And if you rely on one that uses the wrong standard, and that was pointed out, it was not raised for the first time in circuit court. It was pointed out, if you look at pages 435 and 436 of the common law record, she used the wrong standard. She never looked at obsolescence. She did what was done by the loser in the Peacock case and just looked at the cost approach, where Blaine looked at obsolescence. They critique how he looked at obsolescence. They critique that he relied in part on his illustration of obsolescence on a court-ordered sale, even though he said, well, it was typically advertised. Everyone had an opportunity to inspect it. The highest bidder could bid on it, but clearly not a normal situation. But in the Peacock case, the court said, you don't need comparables. You need experience of an appraiser looking at the issue. And that's what Mr. Blaine did, and that is what Joyce Webb refused to do. So based on that, there's an issue of law here, because you only have one person that gave a qualified opinion and looked at the issue that the court said you have to look at. And in this situation, that was Blaine. And this hearing officer, not only did he cut off discussion, if you look at page 436 of the record when I'm exploring why she's not using the right standard, but he relied on incompetent testimony based on a new definition that you can never have obsolescence when someone builds a building because they wouldn't build it that way unless they wanted it that way. Mr. Bevin, can you explain to us the concept of functional obsolescence? Yes. So functional obsolescence basically is when a building has a super adequacy or something in its construction that doesn't translate fully into value for that property. And so, you know, one example in a non-farm case is a swimming pool. A swimming pool doesn't always add value to the property because it's not something everyone would want. You know, it's a little different concept here. It's based on productivity. So obsolescence in the case of a farm building is what is beyond what is necessary for making this farm productive and how much does it really add to the production of the farm. And in this situation, you have a half-acre building. You don't need a half-acre building to make a 224-acre farm productive. Thank you very much. Thank you all for your argument today. Thank you. We will take this matter under advisement to pass you with a written decision within a short time. Thank you, Your Honor. You may now take your recess until 10.30.